**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-CV-01690-RM

ELIGIO JOSE VELASQUEZ,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER

---

This matter is before the Court on Plaintiff Eligio Jose Velasquez's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ") ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

Defendant provided the Court with the administrative record[1]. (ECF Nos. 12; 12-1; 12-2; 12-3; 12-4; 12-5; 12-6; 12-7; 12-8; 12-9; 12-10.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 19; 22; 23.)

---

[1] The parties dispute whether the administrative record is complete. This aspect of the parties' dispute is not material to the Court's Order and thus, the Court declines to decide the issue.

For the reasons set forth below, the Court affirms Defendant's denial of Plaintiff's DIB and SSI applications.

## I.    BACKGROUND

Plaintiff applied for DIB and SSI in August 2011, alleging he was disabled as of April 1, 2010, due to the following conditions that limit his ability to work:  knees, back, shoulders, and mental.  (Admin. R. ("Tr.) 73, 156-171, 184.)  After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ.  (Tr. 94-100.)  The ALJ denied Plaintiff's applications.  (Tr. 12-28.)  Plaintiff requested review of the ALJ's decision and, in April 2014, the Appeals Council denied such review.  (Tr. 1-6.)  Plaintiff timely requested judicial review before the Court.

### A.    Background and Relevant Medical Evidence

Plaintiff was born in 1962.  (Tr. 156.)  Plaintiff has a GED.  (Tr. 76.)  Plaintiff's past relevant work history, as referenced in the Dictionary of Occupational Titles, includes: construction labor; material handler; and plumber's helper.  (Tr. 64.)

Plaintiff claims he became disabled on April 1, 2010 due to a combination of physical and mental health impairments.  (Tr. 73, 156.)  Plaintiff has an extensive medical history during the relevant time period.

#### 1.    Department of Veteran's Affairs ("VA") Treatment

In June 2010, Plaintiff sought mental health care at the VA during which he stated he had a history of depression and substance abuse but had been sober (except for marijuana) for a few years and doing well until a recent series of stressful life events.  (Tr. 500.)  But on June 4, 2010, Plaintiff reported he relapsed with alcohol and "received a DUI."  (Tr. 500.)  His employer at the time then terminated his employment when Plaintiff informed it of the DUI.  (Tr. 500.)

In July 2010, Plaintiff established primary care.  (Tr. 505.)  Plaintiff reported a history of bipolar/depression.  (Tr. 505.)  Plaintiff reported past knee and wrist surgery and a left hand injury.  (Tr. 505.)  Further, Plaintiff reported a history of arthritis in his hands and knees.  (Tr. 507.)  The family nurse practitioner evaluated Plaintiff to have a depressed mood.  (Tr. 507.)  Plaintiff was also confirmed to have Hepatitis C.  (Tr. 509.)  The family nurse practitioner prescribed motrin for Plaintiff's shoulder pain.  (Tr. 509.)  Plaintiff tested positive for PTSD.  (Tr. 511.)  Subsequent x-rays of Plaintiff's left knee showed degenerative changes of the knee with probable loose bodies.  (Tr. 409.)

In August 2010, Plaintiff underwent a mental health-intake assessment.  (Tr. 479-80.)  Plaintiff reported that for the "past 8 years he has only had alcohol about 4 times each year, but reports when drinks he drinks to intoxication."  (Tr. 480.)  Plaintiff reported smoking marijuana daily.  (Tr. 480.)  Plaintiff reported that he had been treated with antidepressants in 2001 but was abusing alcohol at the time and did not remain on the medications.  (Tr. 480.)  Plaintiff reported alcoholism; chronic depression; Hepatitis C; knee pain; back pain; shoulder pain; and headaches.  (Tr. 483.)  Plaintiff was taking ibuprofen for pain/inflammation management.  (Tr. 484.)  Plaintiff appeared "alert and attentive."  (Tr. 484.)  Plaintiff reported "auditory hallucinations[;] [i]n [the] past 8 years when sober; [and he was] aware of hearing voices at times during the day."  (Tr. 485.)  The initial examiner provided an initial diagnosis of depressive disorder; alcohol abuse in partial remission; marijuana abuse; hepatitis C; headaches; and a GAF score of 50.  (Tr. 485-86.)

In September 2010, Plaintiff reported that ibuprofen had been somewhat helpful for his pain related to bicipital tendinitis and that he would like to increase the dose.  (Tr. 477-78.)  Subsequently, also in September 2010, Plaintiff complained of panic attacks for 3-4 days in a

row.  (Tr. 469.)  The panic attacks were "resolved" prior to his treatment in September 2010.  (Tr. 469.)  Additionally, Plaintiff saw a mental health provider for psychotherapy and medication management.  (Tr. 471-75.)  Plaintiff was determined to have a Global Assessment Functioning of 50.  (Tr. 474.)  Plaintiff reported hearing voices at the volume of a whisper but that his thought process was logical.  (Tr. 472.)  In October 2010, Plaintiff saw a mental health provider and reported no psychotic symptoms.  (Tr. 465.)

Following Plaintiff's release from jail for a DUI, in July 2011, Plaintiff reported for medical treatment at the VA.  (Tr. 460.)  Plaintiff reported having a depressed mood and hearing voices.  (Tr. 460.)  Plaintiff was on marijuana.  (Tr. 460.)  Plaintiff was examined to be dysphoric and hearing voices.  (Tr. 461.)  Plaintiff was prescribed certain medications that he reported helped his psychotic symptoms and depression but that he had stopped taking subsequent to his release from jail.  (Tr. 463-64.)  The social worker described Plaintiff's thoughts as logical during the examination.  (Tr. 464.)  Also in July 2011, Plaintiff received treatment for his physical ailments and received a prescription for ibuprofen.  (Tr. 451-54, 458-59.)  At that time, Plaintiff reported that his "shoulders and knees have been bothering him for about 2 years."  (Tr. 458.)

From August to October 2011, Plaintiff received psychotherapy and medication management for his mental symptoms.  Plaintiff reported varying levels of improvement and, on occasion, problems with anxiety.  (Tr. 434-38, 438-45, 445-58, 575-80, 586-90.)  At one point, Plaintiff admitted that "he has been paranoid for most of his life."  (Tr. 437.)

In September 2011, Plaintiff sought treatment for back, knee, and shoulder pain.  (Tr. 584-86.)  Plaintiff was evaluated to have "[n]o muscle atrophy or weakness" but did have a diminished range of motion in his shoulders.  (Tr. 593.)  The medical provider determined that

Plaintiff's chronic left knee pain and tendinitis were poorly controlled.  (Tr. 594.)  The medical provider determined that Plaintiff's depressive symptoms and auditory hallucinations were improved.  (Tr. 594.)

In November 2011, Plaintiff complained of back and left knee pain after raking a yard.  (Tr. 549.)  The provider noted that recent x-rays showed sever spondylosis of the low back and degenerative changes with probable loose bodies in the left knee.  (Tr. 549-50, 523.)  The provider prescribed medications and recommended Plaintiff continue activities as tolerable and participate in physical therapy.  (Tr. 550.)

In November and December 2011, Plaintiff had routine psychotherapy and medication management appointments.  (Tr. 539, 543-47.)

In July 2012, Plaintiff was referred for an orthopedic evaluation of his knee and shoulders.  (Tr. 721-23.)  Left shoulder x-rays showed moderate degenerative changes (Tr. 727-28) and left knee x–rays showed moderate degenerative joint disease (Tr. 728-29).  A knee brace was prescribed for Plaintiff's left knee.  (Tr. 710-11.)

2.      Denver County Sheriff Department Health Services Treatment

From October 2010 to June 2011, Plaintiff received routine treatment for complaints including knee, shoulder, and back problem as well as depression and hearing voices.  (Tr. 372-408.)  Plaintiff was prescribed medication.  (Tr. 376.)

3.      Examinations and Review in Connection with Disability Applications

In November 2011, Plaintiff saw Mac Bradley, Ph.D., for a consultative examination.  (Tr. 515-20.)  Dr. Bradley found that Plaintiff did not exhibit "signs of psychotic thought process" and exhibited "no anomalies of thought content."  (Tr. 518.)  Dr. Bradley found "no significant deficits in memory or intellectual functioning."  (Tr. 519.)  Dr. Bradley found that Plaintiff's report of "'hearing voices'" was not "typical of bona fide hallucinations."  (Tr. 519.)

Dr. Bradley found Plaintiff not to be impaired with respect to basic work-related activities.  (Tr. 519-20.)

In November 2011, James Wansrath, Ph.D., performed a review of the record and determined that Plaintiff has mild limitations in social functioning, concentration, persistence, or pace.  (Tr. 77, 88.)

In November 2011, Plaintiff saw Thurman Hodge, D.O. for a consultative physical examination.  (Tr. 525-30.)  Hodge determined that Plaintiff's complaint of significant low back pain "appeared mild at this exam."  (Tr. 529.)  Further, Hodge found that the examination of Plaintiff's shoulder range was "benign" other than for not allowing abduction of his arms greater than 140 degrees.  (Tr. 529.)  Further, Hodge found that the stated limitations were not supported by his examination and found only certain limitations.  (Tr. 529.)

In April 2012, Maria Legarda, M.D., reviewed the evidence and opined that Plaintiff had limitations consistent with ability to perform a range of medium duty work.  (Tr. 677).)  Richard Kaspar, Ph.D., agreed with Dr. Wanstrath that Plaintiff did not have a severe mental impairment. (Tr. 675.)

4.     Denver Health

In May 2012, Plaintiff received care at Denver Health.  In his left knee, Plaintiff was diagnosed with a tear of his meniscus and anterior cruciate ligament, cartilage damage, and a small joint effusion with loose bodies.  (Tr. 766-67, 776.)  Plaintiff discussed replacement of his left knee with Dr. Berroa.  (Tr. 772-73.)

5.     Hearing Testimony

Plaintiff testified that physical and mental impairments preclude his ability to work.  (Tr. 50.)  Physical impairments include his back, knees, shoulders, and right wrist.  (Tr. 54-55, 59-

61.)  Plaintiff testified that he uses a cane (Tr. 51, 59); could only lift and carry 10 pound, sit for a half hour, stand for a half hour, and walk six blocks.  (Tr. 50-51, 56.)  With respect to his mental impairments, Plaintiff testified that he heard voices "[d]aily and nightly," had bipolar disorder, anxiety, panic attacks, and had been treated for PTSD.  (Tr. 53, 56-58, 62-63.)

Robert Pelc, Ph.D., testified as a psychological expert.[2]  Dr. Pelc, after having reviewed Plaintiff's medical records, opined that Plaintiff's impairments did not meet or equal a mental health listing.  (Tr. 41-42.)  Further, Dr. Pelc testified that Plaintiff had at most "moderate" mental limitations in certain areas (*i.e.*, social functioning; concentration, persistence, and pace).  (Tr. 42-44.)

## B.      The ALJ's Decision

On March 22, 2013, ALJ Randi E. Lappin issued her decision in this matter denying Plaintiff DIB and SSI.  (Tr. 12-28.)  In reaching her decision, ALJ Lappin followed the five-step sequential evaluation for process for evaluating disability claims.  (Tr. 16-28.)  ALJ Lappin found that Plaintiff has met the disability insured status of the Act through December 30, 2015.  (Tr. 17.)  ALJ Lappin found that Plaintiff has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date.  (Tr. 17.)  ALJ Lappin found that Plaintiff has the following severe impairments:  psychosis not otherwise specified, depressive disorder not otherwise specified, post-traumatic stress disorder ("PTSD"), a history of polysubstance abuse, degenerative joint disease in bilateral knees greater on the left than the right, meniscus and anterior cruciate ligament tears of the left knee, lumbar degenerative disk disease, obesity, and rotator cuff and bicipital tendonitis.  (Tr. 17-18.)  ALJ Lappin found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[2] Dr. Pelc reviewed additional evidence after the hearing which Plaintiff submitted; Dr. Pelc stated that his opinion about Plaintiff's mental limitations was unchanged.  (Tr. 763.)  Plaintiff did not submit any interrogatories or request a reopening of the hearing based upon Dr. Pelc's statement.  (*See generally* Tr.)

impairments in Appendix 1 of the Social Security Regulations.  (Tr. 18-20.)  ALJ Lappin found

Plaintiff's residual functional capacity ("RFC") to be as follows:

> to lift and carry up to 10 pounds frequently and 20 pounds occasionally, and push and pull within the lifting restrictions.  The claimant can sit for 30 minutes without interruption before standing and stretching briefly for one to two minutes without leaving the workstation, sit for six hours total in an eight-hour workday, stand and/or walk for 30 minutes without interruption before sitting for up to five minutes, and stand and/or walk for two hours total in an eight-hour workday.  The claimant can frequently balance but only occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can occasionally reach overhead bilaterally but only non-load bearing.  The claimant can frequently operate foot controls bilaterally.  The claimant can tolerate occasional exposure to extreme cold, but cannot work at unprotected heights or around machinery that might require agility in order to evade.  The claimant can understand, remember, and carry out instructions consistent with up to three-step operations; is limited to short-cycle, repetitive tasks with minimal change in the environment; is able to sustain attention for two-hour blocks throughout an eight-hour workday; is able to complete assigned tasks with ordinary supervision; is able to exercise sufficient judgment to make basic work-related decisions; and can adhere to a normal schedule.  The claimant can tolerate occasional public interaction and is able to interact appropriately with supervisors and co-workers, if the contact is neither frequent nor prolonged.

(Tr. 20.)  ALJ Lappin found that Plaintiff has past relevant work but that he is unable to perform

such work.  (Tr. 27.)

Based on the vocational expert's ("VE") testimony, which in turn was predicated on ALJ

Lappin's hypotheticals and in consideration of Plaintiff's age and education, ALJ Lappin found

that Plaintiff could perform jobs that exist in significant numbers in the national economy.  (Tr.

27-28.)  These jobs include:  production assembler and bench assembler.  (Tr. 28.)

Therefore, ALJ Lappin concluded that Plaintiff was not disabled.  (Tr. 28.)

### C.    Procedural History

Plaintiff appealed the ALJ's decision at issue in this matter.  (Tr. 7-11.)  On April 18,

2014, the Appeals Council denied Plaintiff's request for review but added certain documents to

the administrative record. (Tr. 1-6.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 2.)

## II.   LEGAL STANDARDS[3]

### A.   Standard of Review

The Court reviews Defendant's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing Defendant's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

---

[3] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B.    Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not [fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability.  *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis).  If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).  First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i).  Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities.  *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.  *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii).  If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step.  Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past."  *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  If the claimant is able to perform his or her previous work, he or she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv).  Fifth, the Commissioner must demonstrate:  (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

### III.   ANALYSIS

Although Plaintiff raises three specific issues for the Court's consideration (ECF No. 19 at 3), the Court concludes that Plaintiff, in fact, raises eight issues, including:  (1) "that the ALJ did not ask and the VE did not attribute a specific number to each of the [identified jobs within Plaintiff's RFC]" (ECF No. 19 at 29); (2) that "the ALJ did not inquire of the physical and mental demands of the jobs described by the VE" (ECF No. 29 at 19); (3) that "[t]he [h]ypotheticals are lacking in crucial facts because the ALJ did not include the mental health diagnoses restrictions such as anxiety and panic attacks" (ECF No. 19 at 29); (4) that "[t]he ALJ erred in finding that Plaintiff's testimony was not credible under SSR 96-7" (ECF No. 19 at 33); (5) that "the combination of all of the documented physical and mental disorders that [Plaintiff] has equals the listings" (ECF No. 19 at 35); (6) that "the ALJ failed to analyze [Plaintiff's] mental impairments according to the manner prescribed by the regulations" (ECF No. 19 at 35) (7) that "the ALJ did err in determining that [Plaintiff] had the [RFC] to perform a full range of light work at Step 5 under SSR 96-8" (ECF No. 19 at 35); and (8) that "[t]he ALJ erred in not assigning any weight to the treating doctors, or consultants, Veteran's Hospital, and Denver [H]ealth Medical Center Providers" (ECF No. 19 at 39).

Because the Court finds the ALJ's findings were supported by substantial evidence and free of harmful error, the Court affirms Defendant's decision.

### A.   The ALJ Found that Plaintiff Could Perform Jobs Existing in Significant Numbers in the National and Local Economy

The ALJ found that Plaintiff's RFC would preclude him from performing his past relevant work.  (Tr. 27.)  The ALJ then evaluated whether Plaintiff could perform jobs existing in the national economy given Plaintiff's age, education, and RFC.  In making this determination, the ALJ relied on the VE's testimony that a hypothetical person of Plaintiff's age,

education, work experience, and of a similar RFC could perform jobs existing in significant numbers in the national economy.  (Tr. 28, 61-67.)

The ALJ identified the number of jobs, accounting for erosion, his limitations would impose on the occupational base.  (Tr. 28.)  That is, 180,000 assembly jobs in the national economy and approximately 1,600 jobs in Colorado.  (Tr. 28; *see* Tr. 67.)  This was sufficient. *See Botello v. Astrue*, 376 F. App'x 847, 851 (10th Cir. 2010) (unpublished) (67,250 jobs in the national economy is significant); *see also Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (11,000 jobs in the national economy was substantial evidence to support a determination of nondisabled); *see also De La Cruz v. Colvin*, Case No. 12-CV-2385-WJM, 2013 WL 5812551, at *4 (D. Colo. Oct. 29, 2013) (150,000 jobs in the national economy is significant).

### B.     The ALJ Properly Included All Impairments Substantiated By the Evidentiary Record

Plaintiff argues that the ALJ should have included additional limitations in her hypothetical question to the VE[4] and did not inquire as to the physical and mental demands of the jobs identified by the VE based upon the proposed hypotheticals.  The hypothetical question must "include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (citations omitted).  The ALJ's hypotheticals (Tr. 64-70) included the limitations she found in the RFC assessment (Tr. 20).  The VE's testimony, predicated upon the ALJ's hypotheticals, thus constitutes substantial evidence for the ALJ's conclusion that a substantial number of jobs exists that Plaintiff could perform.  *See Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000).  Further, Plaintiff provides no legal precedent that the ALJ must "inquire of the physical and mental demands of the jobs described by the VE."

---

[4] The Court further addresses Plaintiff's argument with respect to deficiencies in the RFC later in this opinion.

(*See generally* ECF No. 19.)  Rather, the ALJ's hypotheticals to the VE implicitly contain the physical and mental demands of the jobs described by the VE.

### C.     The ALJ's Credibility Determination is Supported by Substantial Evidence

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation and citation omitted).  "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler*, 68 F.3d at 391 (internal quotation and citation omitted).  The ALJ must set forth specific medical and non-medical evidence relied on in determining the claimant's subjective complaints to be not credible.  *Kepler* does not require a formalistic factor-by-factor recitation of the evidence.  *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (citation omitted).  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  "[T]he extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Plaintiff takes issues with the ALJ's assessment of Plaintiff's allegedly inconsistent statement regarding "jail" versus "prison," of Plaintiff's daily activities, and of reports as to when he hears voices.  (ECF No. 19 at 33-35.)  The ALJ properly discounted Plaintiff's subjective complaints of pain and mental limitations even if issue may be taken with respect to a few particular bases such as a distinction between "jail" and "prison."  Specifically, the ALJ found that Plaintiff's "DUI charge and subsequent incarceration are the primary reason he

stopped working, rather than his allegedly disabling impairments." (Tr. 21.)

First, Plaintiff's statements concerning his symptoms were not credible because they were not supported by objective medical evidence which the ALJ properly cited to applicable medical records. "[A] pain-producing impairment, whether psychological or physiological in origin, must be proven by objective medical evidence before an agency decision maker can find a claimant disabled by pain." *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) (citations omitted). In other words, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993) (citation omitted). In assessing credibility, the ALJ properly considered the consistency of nonmedical testimony with objective medical evidence. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (citation omitted); SSR 96-7p (July 2, 1996), 1996 WL 374186 at *5-6. Further, the ALJ found Plaintiff's "physical and mental impairments are chronic in nature and were present for some time before [he] stopped working." (Tr. 21.) Also, the ALJ found "no medical evidence of a significant change in the [Plaintiff's] physical or mental conditions that would explain why he would be unable to work after 2010, when he was able to maintain steady employment for several years through 2010." (Tr. 22.) Although the ALJ found that Plaintiff "can no longer perform the heavy exertion work he did in the past . . . the weight of the evidence shows that he could perform other work." (Tr. 22.) Specifically, the ALJ found that "[w]hile the treatment records show that [Plaintiff] complained of pain in his knees, back, and shoulders, the medical evidence does not reflect complaints of pain of the severity he alleged at the hearing." (Tr. 22.) Again, the ALJ relied upon "physical examination results; in particular, the claimant's full strength, full spine and joint range of motion, and the absence of abnormal neurological signs; [to] show that [Plaintiff] would be able to perform seated light exertion work." (Tr. 23; *see* Tr.

529.)

The ALJ found that as of September 2011, Plaintiff's diagnosis was "psychosis not otherwise specified and alcohol dependence in early remission." (Tr. 24.) The ALJ found that as of August 2012, Plaintiff's diagnosis included "bipolar disorder." (Tr. 24.) The ALJ found that Plaintiff was diagnosed with PTSD in October 2012. (Tr. 24.) The ALJ found that Plaintiff's "symptoms include[] auditory hallucinations, depression, difficulty sleeping, poor concentration and energy, and paranoia." (Tr. 24.) The ALJ found that Plaintiff "experienced improvement in his symptoms with treatment and medication." (Tr. 24.) Specifically, Plaintiff stated, at his consultative evaluation, "his medications help reduce and manage his symptoms" (Tr. 24) and at the hearing Plaintiff "testified that his medications calm the voices down and help with the anxiety attacks" (Tr. 24). The ALJ found that Plaintiff's "behavior, presentation, and mental status evaluations are generally unremarkable and show that he would be able to work within the residual functional capacity." (Tr. 25; *see* Tr. 519-20.)

For the above stated reasons, the ALJ properly considered the factors set forth in SSR 96-7p, 1996 WL 374186, at *5-8 (listing credibility factors such as medical evidence, the Plaintiff's daily activities, the effectiveness of treatment, etc.)

**D.**     **Plaintiff's Arguments that His Medical Conditions Meet a Listing and the ALJ Failed to Analyze His Mental Impairments With Respect to a Finding a Degree of Limitation in Functional Areas are Perfunctory and, therefore, Waived**

Plaintiff, in four sentences, makes two separate arguments:  (1) that the combination of his physical and mental disorders equals a listing; and (2) the ALJ failed to analyze his mental impairments in accordance with the regulations.  (ECF No. 19 at 35.)

1.     Listing Evaluation

Plaintiff does not state which listing he allegedly equals.  (*See generally* ECF No. 19.) Plaintiff does not provide argument tied to facts as to how he allegedly equals a listing.  (*See generally* ECF No. 19.)  The Court finds that Plaintiff has waived his argument that he equals a listing.  *See Wall*, 561 F.3d at 1065 (citation omitted).

"To show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."  *Lax*, 489 F.3d at 1085 (citations omitted); 20 C.F.R. § 404.1513(a) (discussing acceptable medical sources).  Plaintiff has the burden to present evidence establishing that his impairments meet or equal listed impairments.  *Bowen*, 482 U.S. at 146 n.5; *see Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005); *see also* 20 C.F.R. §§ 404.1526(b)(2)-(3), 404.1509.

2.     Mental Limitations

Plaintiff does not provide argument tied to facts as to how the ALJ failed to properly evaluate his mental impairments in accordance with the regulation.  (*See generally* ECF No. 19.) The Court finds that Plaintiff has waived his argument that the ALJ failed to properly analyze his mental impairments in accordance with the regulations.  *See Wall*, 561 F.3d at 1065.

The special technique for evaluating a disability claim that involves mental impairments

is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.  The degree of functional limitation resulting

from an impairment is identified by considering "all relevant and available clinical signs and

laboratory findings, effects of [the] symptoms, how the functioning may be affected by factors

including, but not limited to, chronic mental disorders, structural settings, medication, and other

treatment."  20 C.F.R. § 404.1520a(c).  After the ALJ assesses the degree of functional

limitations in the areas of daily living; social functioning; concentration, persistence, or pace;

and episodes of decompensation, the severity of the claimant's mental impairment will be

determined.  20 C.F.R. § 404.1520a(d).  To complete this step, the ALJ uses a five-point scale,

rating the degree of limitation in the first three areas as either none, mild, moderate, marked, or

extreme; and the limitation in the fourth area using a numerical scale of either none, one or two,

three, or four or more.  *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (citing 20 C.F.R.

§§ 404.1520a(c)(4), 416.920a(c)(4)).  The ALJ's degree-of-limitation ratings then inform his

conclusions at steps two and three of the five-step analysis.  *Id.* (citing 20 C.F.R. §§

404.1520a(d); 416.920a(d)).  The claimant's mental limitations "must be expressed in terms of

work-related functions," such as understanding instructions, using judgment to make work-

related decisions, and interacting appropriately with the public or co-workers.  Social Security

Ruling ("SSR") 96-8p, 1996 WL 374184, at *6 (July 2, 1996).  The ALJ's "written decision

must incorporate [his] pertinent findings and conclusions."  20 C.F.R. § 404.1520a(e)(4).

In this matter, the ALJ found Plaintiff's mental impairments were not severe because

Plaintiff's mental impairments caused "no more than mild restrictions in the activities of daily

living[,] . . . moderate difficulties maintaining social functioning[,] . . . moderate difficulties

maintaining concentration, persistence and pace[,] . . . and 'no' episodes of decompensation. . . ."

(Tr. 19.)  Here, the ALJ discussed Plaintiff's mental impairments in considering Plaintiff's RFC.

(Tr. 24-27.)

### E.    The ALJ Properly Determined Plaintiff's RFC

Plaintiff attacks the ALJ's RFC determination by contending that the ALJ failed to

account for each of Plaintiff's physical and mental limitations; failed to evaluate his subjective

complaints[5]; and rejected medical opinion evidence.

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the

claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  The RFC is an assessment of the most a

claimant can do despite his or her limitations.  *Id.*  Examples of the types of evidence required to

be considered in making an RFC assessment are the claimant's medical history, medical signs,

laboratory findings, and medical source statements.  SSR 96-8p, 1996 WL 374184, at *5 (July 2,

1996).  An ALJ must make "specific" RFC findings based on all of the relevant evidence in the

case record.  *See Winfrey*, 92 F.3d at 1023, 1025.

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts . . . and
> nonmedical evidence . . . the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a regular and
> continuing basis . . . and describe the maximum amount of each work-related
> activity the individual can perform based on the evidence available in the case
> record.  The *adjudicator must also explain how any material inconsistencies or
> ambiguities* in the evidence in the case record were considered and resolved.

1996 WL 374184, at *7 (emphasis added).  The ALJ's findings regarding a claimant's RFC must

be supported by substantial evidence.  *See Hadock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.

1999).

"[A]n ALJ is required to consider all of the claimant's medically determinable

impairments, singly and in combination; the statute and regulations require nothing less" and a

---

[5] The Court addresses the ALJ's credibility determination above.

failure to do so "is reversible error." *Salazar*, 468 F.3d at 621 (citations omitted); *accord* 42

U.S.C. § 423(d)(2)(B); *accord* 20 C.F.R. § 404.1523.  At Steps 4 and 5, the ALJ "must consider

the combined effect of all of the claimant's medically determinable impairments, *whether severe*

*or not severe*." *Wells*, 727 F.3d at 1065 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2))

(emphasis in original).  "[T]he Commissioner's procedures do not permit the ALJ to simply rely

on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at

1065 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).  "[T]he ALJ's 'RFC assessment

must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts . . . and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (citing 1996 WL

374184 at *7).  When determining the RFC, the ALJ must consider all medically determinable

impairments, physical and mental, even those that are not considered "severe."  20 C.F.R. §

404.1545(a)(2), (b), (c), (d), (e).

      1.   <u>Mental Limitations</u>

Mental limitations must be part of the RFC assessment, because "[a] limited ability to

carry out certain mental activities, such as limitations in understanding, remembering, and

carrying out instructions, and in responding appropriately to supervision, coworkers, and work

pressures in a work setting may reduce [a claimant's] ability to do past work and other work."

*Id*. § 404.1545(c).

In this matter, the ALJ's RFC is consistent with Dr. Pelc's opinion that Plaintiff, despite

certain of Plaintiff's moderate mental impairments, could perform a range of unskilled (and some

more complex) work with certain social restrictions.  (Tr. 20, 25-26, *see* Tr. 42-44, 763, *see*

*generally* Tr. 223-24.)  Further, the ALJ's RFC is consistent with substantial evidence in

Plaintiff's treatment records.  (Tr. 25, *see* Tr. 474, 463, 458, 460, 434, 435,437, 445, 449.)  The

ALJ discussed Plaintiff's mental impairments in her RFC analysis.  (Tr. 24-27.)  The decision contains evaluation of Plaintiff's functional limitations in relation to his mental impairments, including Plaintiff's alleged anxiety.  (Tr. 24-27.)  Therefore, any error in not finding Plaintiff's anxiety to be severe at Step Two became harmless when the ALJ proceeded to the next step of the evaluation sequence and considered Plaintiff's anxiety.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

The Social Security Administration has stated that where the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of "unskilled" work would be appropriate.  *See* 20 C.F.R. § 404.1545(c); SSR 85-15, 1985 WL 56857, *4 (Jan. 1, 1985).  The Tenth Circuit has noted that there is a distinction between skill level and mental functions.  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished); *see also* SSR 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000) ("A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the unskilled level (requires more than 30 days to learn).").  Here, the ALJ found Plaintiff has the ability to perform unskilled work and found Plaintiff has the ability to perform certain mental residual functions.  (Tr. 20.)

With respect to Plaintiff's mental impairments, the RFC is supported by substantial evidence and free of legal error.

2.    Physical Limitations

In his opening brief, Plaintiff fails to identify any physical limitation that the ALJ did not include in the RFC.  (*See generally* ECF No. 19.)  In his reply brief, Plaintiff argues that the ALJ

failed to mention certain medical records pertaining to his knee pain.  (ECF No. 23 at 6-12.)

Further, Plaintiff argues that the ALJ failed to account for Plaintiff's alleged use of only one

hand.  (ECF No. 23 at 13.)

> The Court recognizes that the ALJ stated that she
>
> considered all symptoms and the extent to which these symptoms can reasonably
> be accepted as consistent with the objective medical evidence and other evidence,
> based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and
> 96-7p [and the] opinion evidence in accordance with the requirements of 20 CFR
> 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 20.)  It is the Court's "general practice of taking a lower tribunal at its word when it declares

that it has considered a matter." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)

(citation omitted).  An ALJ is not required to "discuss every piece of evidence." *Wall*, 561 F.3d

at 1067 (citation omitted).  Further, in this matter, the ALJ discussed, at length, Plaintiff's

bilateral knee impairments and the effect such impairments would have on his RFC.  (Tr. 17, 20,

22-23)  And, the ALJ discussed Plaintiff's alleged right wrist impairment and found it was not

medically determinable and contradicted by the record.  (Tr. 18.)

With respect to Plaintiff's physical impairments, the RFC is supported by substantial

evidence and free of legal error.

3.     Failure to State Weight Afforded to Certain Medical Opinions and
        Treatment Notes

The Tenth Circuit has previously held that

> if the ALJ's RFC is 'generally consistent' with the findings in a medical opinion,
> or if the RFC is "more favorable" to the claimant than the opinion's findings, then
> there is no reason to believe that a further analysis or weight of the opinion could
> advance the claimant's claim of disability.  In such a case, the error is harmless
> because the claimant cannot show prejudice stemming from the ALJ's failure to
> give greater weight to the opinion.

*Thompson v. Colvin*, 551 F. App'x 944, 948 (10th Cir. 2014) (unpublished) (internal alterations

omitted and citation omitted).  The Court recognizes that the ALJ did not state the weight he

afforded to opinions of Drs. Wanstrath, Kaspar, Hodge, and Legarda.  But with respect to the

opinions of these accepted medical providers, the ALJ concluded that Plaintiff "is more

physically limited than assessed by Dr. Hodge and Dr. Legarda" (Tr. 24) as well as Plaintiff has

"'severe' psychological impairments" that were not found by Drs. Wanstrath and Kaspar (Tr. 18)

and appropriately accounted for such limitations in the RFC (Tr. 17, 20).  Thus, the legal error in

failing to assign a weight to their medical opinions is harmless.  *See Thompson*, 551 F. App'x at

948.

Plaintiff argues that the ALJ was required to state the weight she afforded to Plaintiff's

treatment notes by providers at the VA and Denver Health.  (ECF No. 19 at 39-42.)  Treatment

notes—consisting of clinician's observations of Plaintiff's symptoms, the nature of his

impairments, the clinicians' diagnoses and GAF scores that "addressed in general terms the

severity of [Plaintiff's] symptoms and functional difficulties"—do not qualify as medical

opinions to which the ALJ is required to state the weight afforded.  *McDonald v. Astrue*, 492 F.

App'x 875, 884 (10th Cir. 2012) (unpublished).  Notes such as these "do not indicate any

prognoses, nor do they provide opinions as to what [Plaintiff] could still do despite [his]

impairments or the nature of [his] mental restrictions." *McDonald*, 492 F. App'x at 884 (citing *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (finding doctor's statement providing no information about the nature and severity of the claimant's physical limitations or the activities he could still perform was not a medical opinion)).

With respect to the failure to state the weight afforded to certain medical opinions, such error is harmless and the ALJ's RFC is supported by the substantial evidence.  With respect to the alleged failure to state the weight afforded to VA or Denver Health medical treatment notes, there was no error in the ALJ's analysis.

IV.   **CONCLUSION**

Based on the foregoing, the Court:

(1)   AFFIRMS Defendant's denial of disability insurance benefits and supplemental security income.

DATED this 1st day of December, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge